*The final accounting in the Estate of* VALENTINE RUPPERT.

THE will created trusts, 1st for the support of the widow during life; 2d for support of infant children and accumulation of surplus income, until the youngest child arrived at age; each child to receive at majority, his surplus accumulation; but no division of the principal fund to take place till widow's death and majority of youngest child. Held, a valid trust and suspension.

The will directed an accumulation of the income of Wilhelmina's share until William should arrive at age. Held, bad and void as an illegal suspension.

The will nominated T. R. as testamentary guardian; the mother of the minors was living, and had not signified her assent to the guardianship. Held, that the appointment of testamentary guardian was void.

WILLIAM BRUORTON, *for Executors.*
JEREMIAH B. AITKEN, *Special Guardian for Infants.*

The testator died on the 19th day of December, 1866, and his will was admitted to probate, as a will of both real and personal estate, on the 2d day of February, 1867. He left a widow and five children, two of whom, George

and Phillippine, were of age at the time of the accounting. At the time of the death, and of the creation of the estates and trusts under the will, four of the five were infants.

The following was the will:

In the name of God: Amen. I, Valentine Ruppert, at present residing at No. 127 West Fifty-third street, in the city of New York, being of sound mind and memory, and being desirous of making a just and equitable disposition of my property, do make, ordain, publish and declare this to be my last will and testament, in manner following, that is to say:

*First.* I do hereby give, devise and bequeath unto my executors, hereinafter nominated and appointed, the policy of life insurance on my life for the sum of $2,000, to be held by my said executors upon the trust and for the purposes following, that is to say: To collect and receive the same, and to take and have all lawful means to enforce the payment thereof, and, when the same is collected, to divide the same into four equal parts, and to pay over to my son, George Ruppert, one of the said equal fourth parts; to invest the remaining three-fourths parts of said policy or proceeds in good and sufficient bond and mortgages, and hold the same in trust for my sons, John Ruppert, Jacob Ruppert and William Ruppert, until they shall respectively attain the age of twenty-one years; when the share or portion of said insurance with the increase thereof, which may remain, shall be paid to my said sons when and so soon as they shall respectively attain the age of twenty-one years, to have and to hold to each of my said sons one-fourth of said insurance proceeds.

*Second.* I do hereby give, devise and bequeath all the residue and remainder of my estate, both real and personal, wheresoever situate, to my five children, to wit: George Ruppert, Phillippine Unger, now aged eighteen years, John Ruppert, now aged thirteen years, Jacob Ruppert, now aged nine years, and William Ruppert,

now aged seven years; share and share alike, except as hereinafter provided.

*Third.* It is my will, and I do hereby authorize my executors to negotiate for and endeavor to purchase the undivided half part of certain premises in Eighth street, between avenue A and First avenue, New York city, now owned in common by myself and Jacob Rosenstein, if the same can be purchased on reasonable terms and conditions, and said Rosenstein is willing to sell the same; and I do hereby authorize my executors to use for that purpose a certain mortgage, now held by me against my brother, Franz Ruppert, on premises in East Forty-fifth street, in the city of New York, or can use for such purpose any other moneys or personal estate which my said executors may deem best for the interest of my said children, but no part of my real estate shall be sold for that purpose.

*Fourth.* I do hereby order and direct my executors to take charge of all my real and personal estate, to let and rent the real estate for the best terms and conditions they can, and to receive the income thereof; and I do hereby order and direct my executors to support, maintain, and fully provide for my beloved wife, Phillipine, out of my said real estate, which support and maintenance is in lieu of dower; and as she is, and for the past eight years has been insane, I do hereby nominate and appoint my said executors to be the trustees of my said wife, and do hereby make the support of my said wife a charge upon my said estate as long as my said wife shall live.

*Fifth.* I do further order and direct that my said executors, out of the share of the income which may belong to any of my said children who may be under age (except my daughter Phillipine), support and educate such child until they respectively attain the age of twenty-one years, and when so soon as my said children (excepting said Phillipine) shall attain the age of twenty-one years, my said executors shall pay over to such child so attaining such age the income and profits only which may be

realized from their portion of my said estate, it being my intention and will that none of my said children shall receive the principal sum until the youngest shall attain the age of twenty-one years, except as hereinafter provided.

In case my said son, George Ruppert, should desire, I authorize my executors to advance to him his share in the above mentioned mortgage held by me against Franz Ruppert, but the same shall not be given to him until three years after the day of my decease; and in case my said son, George Ruppert, should marry, I authorize and direct my executors to advance to him the sum of $1,000 on account of his interest in my estate, to be paid to him out of the personal property and deducted from his share in the said principal.

*Sixth.* It is my will, and I do hereby order and direct my executors to invest the share of the income devised to my said daughter Phillipine in bonds and mortgages, to remain until my youngest child shall attain the age of twenty-one years, as it is my wish and will that she shall not receive any portion of my said estate until that time, and that she receive the principal sum and income thereof when my youngest child attains the age of twenty-one years, and not before.

*Seventh.* When and so soon as my youngest child shall attain the age of twenty-one years, I direct my executors, or the survivor, or their successors, to put up all my real estate for sale at auction, authorizing my said executors, however, to withdraw the same, and bid the same in, should they deem it advisable for the interest of my said children, and that no portion of my real estate shall be sold before said time; and for that purpose I do hereby fully authorize and empower my said executors, or the survivor, or their successors to execute, acknowledge and deliver any and all deeds or conveyances in the law which may be considered or deemed necessary for the conveying to the purchaser or purchasers of such sole said real estate, or any part or parcel thereof, with or without covenants,

*Eighth.* In case either of my said children should die before said real estate is sold, as aforesaid, without leaving children, then, and in that case, it is my will that the share of the child so dying shall go to and be divided among the survivors, share and share alike.

*Ninth.* I do hereby nominate and appoint my brother, Franz Ruppert, to be the guardian of my infant children John, Jacob and William Ruppert, and each of them, and also to be the trustee, with my son, George Ruppert, of their estate.

*Tenth.* I do hereby nominate and appoint my said brother, Franz Ruppert, and my son, George Ruppert, to be the sole executors of this my last will and testament, and do also hereby nominate and appoint my said brother, Franz Ruppert, and my said son, George Ruppert, to be the trustees of my said children George Ruppert, Phillippine Unger, John Ruppert, Jacob Ruppert and William Ruppert, under and in pursuance of this my last will and testament; and I do hereby revoke any and all former or other wills by me at any time made.

In witness whereof, I have hereunto set my hand and seal, at the city of New York, this 15th day of December, in the year 1866.

VALENTINE RUPPERT. [L. S.]

THE SURROGATE. The special guardian for the infants next of kin submits that the provisions of the will, or some of them, contravene the Revised Statutes by illegally suspending the power of alienation and creating trusts for terms and purposes not authorized. It will be necessary to examine the several clauses of the will in their order.

The first clause creates a trust, to collect the sum secured by a certain policy of insurance; to divide this sum into four equal parts; to pay to George Ruppert one of those parts; and to invest the three parts remaining and hold them in trust for John, Jacob and William, until they

respectively arrive at age; and to pay each of them, on his arriving at age, his part of the principal so invested, with the accumulated interest thereon.

This is a valid trust. A direction for accumulation of personal property for the benefit of an infant, then in being, to take effect at the death of testator, and to end with the minority of each *cestui que trust*, is expressly authorized by the Revised Statutes:

" § 3. An accumulation of the interest of money, the produce of stock, or other income or profits arising from personal property, may be directed by any instrument sufficient in law to pass such personal property, as follows:

".1. If the accumulation be directed to commence with the date of the instrument, or from the death of the person executing the same, such accumulation must be directed to be made for the benefit of one or more minors then in being, or in being at such death, and to terminate at the expiration of their minority. * * *

" § 4. * * * A direction for an accumulation in either of the cases specified in the last section, for a longer term than the minority of the persons intended to be benefited thereby, shall be void only as respects the time beyond such minority." (3 *R. S.*, 5th ed., *p.* 75.)

This bequest and trust are therefore good.

The next question arises under the second clause of the will. This clause is a full disposition of the testator's residuary estate, " except as hereinafter provided." It is only out of the usual place in the will; had it been placed at the end of the instrument, it would not have attracted objection. So far as it comes in conflict with any subsequent valid clause or provision of the will, it must be held to be modified thereby and subject thereto.

The fourth clause creates a trust or a power in trust, in all the residue of the real and personal estate, during the life of the widow, and charges her support upon the income of the real estate so long as she shall live. This is valid beyond a doubt, and suspends the power of aliena-

tion of the residue of the real estate, and the absolute ownership of the residue of the personal property, during one life—that of the widow.

The fifth clause of the will creates two trusts, or rather, what may be considered as two. The first is, to support and educate each child, except Phillippine, out of that child's respective share of the income of the residue, both real and personal, until the majority of that child. This is unquestionably good.

The second is, to continue, after the majority of each child, to hold his share of the principal in trust till the youngest attains majority; to pay each child, on majority, that child's accumulation of the income on his share, over the amount which has been expended for his support; and only to divide the principal of the residue, real and personal, among all the children, when the youngest attains majority.

The duties imposed on the executors as trustees were, then:

1st. To hold in trust during the widow's life for her support.

2d. To hold in trust the surplus income, after paying widow's support, or after her death, for support of minor children, and for accumulation of what shall remain.

3d. To pay over his share of unexpended and accumulated income to each child attaining majority.

4th. To continue to receive the income of the shares of both adult and minor children, till William attains majority.

5th. To sell real estate and distribute when William attains majority.

William being the youngest child, at the time of the death of the testator, and the creation of the estate in the trustees, the decisions have settled the point that it is his minority that is to be considered. (*Eels* v. *Lynch*, 8 *Bosw. Supr. Ct. R.*; *p.* 465.)

We have, as to the duration of the trust, first, the life

of the widow, and secondly, the minority of William. These must both expire before the residuum is to be divided, before the power of alienation of the realty can be exercised, or the ownership of the personalty transferred.

There is no disposition made, in this clause of the will, of such income as may accrue on each child's share of the real estate, after that child attains majority. And it is this that has made the difficulty in the will. For instance, John, the testator's son, arrives at age. He then receives his arrears of accumulation of unexpended income. But his share is still suspended. What becomes of the income yet to accrue upon it till William arrives at age? It must go on earning income. It must remain in the hands of the trustees. The trustees must continue to receive the income upon it. Does this income go to and become distributable among the legatees named in the second section? I think it does.

The will before me differs from that of Michael Burnham; construed by the Court of Appeals in *Savage* v. *Burnham*, 17 *N. Y.*, *p.* 561. In that case the trust was: 1. To sell the real estate on the death of the widow; 2. That the widow should, during her life, receive to her use one-third the income of the realty, the remaining two-thirds, until the sale, to be deemed personal estate and subject to the same dispositions, which were; 3. To apply the income to support of six sons till they respectively attained age, and four daughters, till they respectively attained age or married; 4. To transfer the principal of the fund to come from the sale, equally, to the children; the shares of the sons to vest at age, the daughters' shares to vest in trustees, to pay the daughters the income for life, with remainder to the daughters' respective issue. This was held good, because the trust provided for no unlawful accumulation. The trust ceased on the principal of each share, when the son or daughter entitled to that share should attain lawful age. The remainders over,

and all limitations beyond the majority of the children were, however, held void, as to each share so limited.

In that case, the principal of each share was to go to the child when he came of age. Here, the principals of the shares of the adult children still remain suspended until the youngest child comes of age. There was an accumulation directed in the Burnham will, but not only the accumulation on each share went to the child on his coming of age, but the share went also. In the present case the accumulation goes, but the share remains. The share remains and continues to accumulate, after the payment of the accumulation made at majority. The share remains suspended for the benefit of adults and infants together; and this will continue to be the case even after the third infant has come of age, and until the fourth does. There, there was a division of the principal of the fund to take place on each successive majority. Here, the principal remains intact until four minorities have expended themselves.

In that case, as in this, the life of the widow was to be reckoned as one of the lives beyond which absolute ownership could not be suspended. We, therefore, begin to calculate with the widow's life. In *Savage* v. *Burnham*, there was one minority, as to each share, to be superadded to the widow's life, to estimate the suspension. In that case, Judge Comstock remarked, in delivering his opinion:

"If the will had provided that the whole estate should be kept under this trust till all the lives or minorities be spent, then it might well be that the absolute ownership of the whole would be deemed suspended, and the trust would fail."

The trust in *Savage* v. *Burnham* did not infringe upon the provision of the Revised Statutes (above quoted), which limits trusts for accumulation to the case of infants. The trust in the will before us is for an accumulation for the benefit of the children, after the majority of each

of them except William, and until the majority of William.

The case of *Eels* v. *Lynch*, 8 *Bosworth R.*, *p.* 465, is directly in point, and furnishes an almost absolute precedent in this connection.

The direction of the will, in that case, was that "my youngest children, Marcellus and Mary, now infants, be educated out of the income of my real estate; and that they, and all my infant children, have maintenance until they attain the age of twenty-one years out of the income." The real estate was not to be sold till the youngest child should attain age. This was held good, as terminating with the majority of Mary, the youngest child. The trust for the maintenance of each child ceased with that child's majority. So in this case. The surplus of the income was there bequeathed to the widow until the youngest child attained majority. In this case the whole interest on each adult's share goes, under the second clause of Valentine Ruppert's will, to George, Phillippine, John, Jacob and William, as residuary legatees.

I must consider this trust to be good, under the decision in *Eels* v. *Lynch*, although, had the question never been passed upon, I should have held the accumulation of income on the adults' respective shares, after their majority, to be void.

The sixth clause of this will is clearly in conflict with the statute, in as far as it attempts to create a trust for the investment and accumulation of Phillippine's share of income, beyond her attaining of age, and until the youngest child of the testator (who is not interested in that share) shall attain age. The prohibition of such a suspension is similar as to both real or personal property. It must terminate with the minority of the person for whose benefit the accumulation is directed. I suppose the provision is valid as to the investment and accumulation of Phillippine's share, up to the termination of her own minority, but no further.

It is well settled that the valid portions of a trust void in part, will be upheld in construction by the Courts. (*DeKay* v. *Irving*, 5 *Denio R.*, *p.* 646; *Parks* v. *Parks*, 9 *Paige R.*, *p.* 107; *Harrison* v. *Harrison*, 42 *Barb. S. C. R.*, *p.* 162; *Williams* v. *Williams*, 8 *N. Y. R.*, *p.* 538.)

The seventh clause prohibits the sale of any portion of the real estate, until the arrival at age of the youngest child, William. A power of sale is then given to the executors, to be exercised at that time. This is good, as there is no unlawful suspension of the time for its exercise. The widow must die, and William must come of age; then the executors must sell.

The ninth clause attempts to appoint a testamentary guardian for the children. This is invalid, unless the consent of the mother be given. Formerly, by the Revised Statutes (3 *R. S.*, *5th ed.*, *p.* 243, § 1), a father could absolutely appoint a testamentary guardian by his will. This power was sometimes exercised so as to deprive the mother of the care, custody and tuition of the children she had brought into the world. It was an arbitrary power in the father, given in consonance with the policy of the English Common Law, which suspended the legal existence of a wife during marriage. This *status* of married women was never accepted voluntarily by the Ecclesiastical Courts of England, which persisted in recognizing their existence and capacity in many ways. (See cases cited in estate of *Bronson*, *supra*, *p.* 467.) The Legislature of this State turned its attention to this question in 1862. (*Acts of* 1862, *chap.* 172, § 2, *p.* 343.) It declared that "no man shall create any testamentary guardian for his child, unless the mother, if living, shall, in writing, signify her assent thereto." This appointment is, therefore, void, it appearing that the mother of the minors is living, and it not appearing that she has signified her assent to the appointment of Franz Ruppert as testamentary guardian.

It appears, by the account of the executors, that they

have not attempted to interfere with the fee of the testator's real estate, and that their acts have not affected the rights of the parties in interest in the estate, as I have considered them to exist.

It also appears that the third clause of the will has been inoperative, the real estate therein referred to having been foreclosed and sold under a mortgage, which existed at the time of testator's death.

A decree will be made declaring the above conclusions, and settling the accounts of the executors accordingly.